**ALLIED VAN LINES, INC.,**
Plaintiff-Appellant,

v.

**SMALL BUSINESS ADMINISTRATION,**
Defendant-Appellee.

No. 81–1187.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1981.

Decided Jan. 11, 1982.

James L. Zemelman, argued, Morris A. Shenker, Jeffrey J. Shank, St. Louis, Mo., for plaintiff-appellant.

Robert D. Kingsland, U. S. Atty., Bruce D. White, argued, Asst. U. S. Atty., St. Louis, Mo., for defendant-appellee.

Before HENLEY and ARNOLD, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

Plaintiff Allied Van Lines, Inc. (Allied) brought this action against defendant Small Business Administration (SBA) claiming that Allied is entitled to $257,069.75 in accounts receivable of Biltmoor Moving & Storage Company (Biltmoor) pursuant to an agency contract between Allied and Biltmoor. The cause was tried before the court sitting without a jury, the Honorable Roy W. Harper presiding. Allied appeals from the district court decision denying Allied the relief prayed for in its complaint. For reasons set out more fully herein, we affirm the district court decision.

The trial court's memorandum decision succinctly states the factual background of this case. On June 23, 1955, Allied and Biltmoor entered into a "Non-Carrier Agency Contract" which provided, inter alia, that Allied would employ Biltmoor to book, register, pack, crate, prepare for transportation, receive, load, transfer, unload, store, warehouse, and deliver shipments of household goods for and in behalf of Allied. The contract further provided that Allied was to bill and carry all shipments so booked and registered by Biltmoor pursuant to Allied's reasonable rules and regulations.

An "NAF/GAF" program was part of Allied's reasonable rules and regulations. Under the NAF/GAF program an agent, such as Biltmoor, would send invoices for services it rendered Allied to Allied for collection. After payment, Allied remitted between fourteen and eighty-nine percent of the collection to the agent. Agent participation in the program was voluntary until an agent developed financial difficulty. At that point participation in the program became compulsory. While participation was compulsory, Richard Kelly, the then President of Biltmoor, testified that an option existed whereby the agent could continue to bill directly the NAF/GAF account and pay a percentage penalty for non-compliance with the billing procedure. Roland Brown, Allied's Credit and Collection Manager, testified that a 2% penalty was imposed upon those agents who failed to comply with the NAF/GAF billing procedure. The only services subject to this billing program were those rendered by an agent for or on behalf of Allied, usually interstate or international transfers. On January 25, 1977, Allied placed Biltmoor on compulsory NAF/GAF participation.

On April 15, 1977, Biltmoor obtained a chattel mortgage of $150,000 from the First Missouri Bank and Trust Company of Creve Coeur, Missouri. The mortgage was secured by "(a)ll machinery and equipment, including automotive, furniture and fixtures now or hereafter acquired and the proceeds thereof. All inventory and accounts receivable now owned or hereafter acquired and the proceeds thereof." Finance statements were filed on April 19th and April 20th, 1977, with the St. Louis County Recorder's office and the Secretary of the State of Missouri, respectively. SBA is the successor to the bank's interest in that loan.

Allied and Biltmoor renewed their agency relation on January 18, 1979. The renewed contract placed an additional duty upon Biltmoor. Biltmoor was required, "in connection with the collection of charges on behalf of Allied, to hold such collections in trust for Allied until remitted by Biltmoor directly to Allied, or by processing through Biltmoor's regular account with Allied."

Between January 25, 1977, and April 5, 1977, Biltmoor accumulated a disputed amount of accounts receivable. On April 5, 1979, however, Biltmoor ceased doing business and assigned "inventory, fixture, office furniture, choses in action, equipment and cash" in trust to Milton Goldfarb for the use and benefit of creditors. Allegedly, Goldfarb had collected Biltmoor's receivables and had paid them to SBA. Allied has received nothing from Goldfarb. Simply stated, Allied and SBA are rival creditors of a now insolvent company.

* Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

Allied raised three issues for this Court's consideration on appeal. First, whether the district court erred when it failed to make a specific finding on the ownership of the accounts receivable generated by Biltmoor's performance under the agency contract. Second, whether the trial court's findings of fact and conclusions of law were erroneous in that Allied did own the accounts receivable generated by Biltmoor's performance. Third, whether the trial court's conclusions of law were erroneous because plaintiff was entitled to have the sale by Allied to Biltmoor of certain interior van equipment rescinded due to misrepresentations and to receive the proceeds from that sale.

■ Appellant first challenges the specificity of the district court's findings of fact. It is well established that the trial court does not need to make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision. *Falcon Equipment Corp. v. Courtesy Lincoln Mercury*, 536 F.2d 806, 808 (8th Cir. 1979). *See also Stanley v. Henderson*, 597 F.2d 651, 654 (8th Cir. 1979); *United States v. F.D. Rich Co.*, 439 F.2d 895, 899 (8th Cir. 1976); *Skelly Oil Co. v. Hollowway*, 171 F.2d 670, 673 (8th Cir. 1948). Findings are adequate if they afford a reviewing court "a clear understanding of the basis of the trial court's decision." *Falcon Equipment Corp. v. Courtesy Lincoln Mercury*, 536 F.2d at 808, citing *Christensen v. Great Plains Gas Co.*, 418 F.2d 995, 1000 (8th Cir. 1969).

■ In the present case a finding of fact on the ownership of the accounts in question would have been helpful to this Court. Nonetheless, this Court can glean a clear understanding of the basis of the trial court's decision. Simply stated, the trial court found that Allied and SBA are rival creditors of Biltmoor, a now insolvent company. Implicit in that finding is a finding that while Allied may have some interest in the accounts receivable, Allied does not in fact "own" those accounts. That analysis is reinforced by other findings of the trial court. For example, the trial court found that "on the date of Biltmoor's assignment

Allied became an unpreferred, unsecured contract creditor of Biltmoor." Allied never sought to secure Biltmoor's agency obligations to it, and in failing to do so never perfected its interests against encroachment by third parties. Accordingly, we hold that the district court's findings of fact are adequate.

■ Appellant's second challenge to the trial court's decision is that the court was clearly erroneous in not finding that Allied was the owner of the accounts. Appellant is correct in citing the proposition that a finding of fact must be clearly erroneous before it can be overturned by an appellate court. When a case is tried before the court sitting without a jury, the court's findings of fact must be upheld unless found to be clearly erroneous.

And a finding of fact is only deemed clearly erroneous if it is not supported by substantial evidence, if it proceeds from an erroneous conception of the applicable law, or if on a consideration of the entire record the appellate court is left with a definite and firm conviction that a mistake has been made. F.R.C.Pro. 52(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *School District No. 54 v. Celotex Corp.*, 556 F.2d 883 (8th Cir. 1977), and cases cited therein.

*Southern Illinois Stone Co. v. Universal Engineering*, 592 F.2d 446, 451 (8th Cir. 1979).

■ In this case there is substantial evidence to support the district court's findings of fact, and those findings do not spring from an erroneous conception of the applicable law. Furthermore, after a consideration of the entire record in this case we cannot say that we are left with a definite and firm conviction that a mistake has been made. There is some evidence in the record to support a finding that Allied owned the accounts. On the other hand, there is more evidence in the record that supports the trial court's implicit finding. Both Richard Kelly, Biltmoor's former President, and Roland Brown, Allied's Credit and Collection Manager, testified at trial that a 2% penalty was assessed against an

agent who did not comply with the compulsory billing procedure. Kelly went so far as to characterize the penalty as an "option." Each party's version was fully briefed. Overall, the district court was presented with a credibility issue. The district court chose to credit the testimony of Kelly. Based upon a review of the entire record we cannot say that the court's findings of fact were clearly erroneous.[1]

■ Appellant's final contention is that the trial court's conclusions of law were erroneous because plaintiff was entitled to have the sale by plaintiff to Biltmoor of certain interior van equipment rescinded due to Biltmoor's misrepresentations and to receive the proceeds from the sale of that equipment. Allied bases its claim for rescission upon language in the combined note and security agreement by which Biltmoor allegedly misrepresented to Allied that Biltmoor would keep the equipment "free and clear of all liens and claims whatsoever, other than the security interest granted hereunder," and that "no financing statement nor chattel mortgage covering the collateral is on file in any public office." Once again the district judge's memorandum decision covers adequately appellant's contentions. The district judge stated "If Allied had perfected its note and security agreement within ten days of the sale, it would have had an interest superior to SBA. R.S.Mo. 400.9–312(4). In fact, Allied did not perfect its interest and SBA's security interest attached to and took precedence over the equipment." It is clear from the district judge's memorandum decision that SBA's interest in the equipment became superior to Allied's interest, not because of any misrepresentation made by Biltmoor, but by operation of law after Allied failed to perfect its security interest in the equipment.

The judgment of the district court is affirmed.

1. We note that appellants made no request in the district court for amended or supplemental

findings. See F.R.C.Pro. 52(b).