WHITE INDUSTRIES, INC.; Eugene C. Ingram, d/b/a Carthage Airways; and Carthage Airways, Inc., Appellants,

v.

The CESSNA AIRCRAFT CO.; Mil Walston; Walston Aviation Sales, Inc.; Southaire, Inc.; Dad, Inc.; Skyliners Dist. Inc.; Harold Gorrell; Aviation Activities, Inc.; and Cessna Finance Corp., Appellees.

No. 87-1672.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1988.

Decided May 6, 1988.

Edward McConwell, Overland Park, Kan., for appellants.

Thomas E. Deacy, Jr., Kansas City, Mo., for appellees.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

White Industries, an authorized dealer of Cessna aircraft, brings this lawsuit against the Cessna Aircraft Company for price discrimination under §§ 2(a) and 2(f) of the Robinson–Patman Act, 15 U.S.C. §§ 13(a) and 13(f). White's suit also alleges a combination and conspiracy to violate § 1 of the Sherman Act, 15 U.S.C. § 1, but, as we discuss below, the Sherman Act claim is really only a variation on White's central price-discrimination theory.

This case started seventeen years ago, in 1971, when the Cessna Finance Corporation sued the White dealership over some notes it claimed were due on two aircraft White had purchased.[1] White responded with a class action brought on behalf of Cessna dealers operating from 1968 to 1974, pressing the Robinson–Patman claim now before us. After a decade of discovery and pretrial litigation, the case was tried to the District Court[2] without a jury in 1984. After the close of the evidence on the issue of liability, the Court granted Cessna's motion for involuntary dismissal of White's suit and decertified the plaintiff class. *White Industries, Inc. v. Cessna Aircraft Co.* 657 F.Supp. 687 (W.D.Mo.1986). White now brings this appeal from the judgment,[3] and we affirm.

I.

From 1968 to 1974, Cessna distributed the airplanes it manufactures through two different channels. It sold about half its output to Cessna distributors, who performed a wholesaler's function by selling to contracted dealer-buyers who would in turn sell to the final consumers. Cessna sold its planes to its distributors at a 25–26% discount. Cessna also developed a second channel of distribution by organizing a number of "zone dealers," like White, to whom Cessna sold planes directly. The function of these zone dealers was parallel to that of the retail dealers who bought their planes through Cessna distributors, in that zone dealers sold their planes to end-users. Cessna sold planes to zone dealers like White at a discount of 20%.

Reduced to its simplest terms, the central theory of this lawsuit is that some or all Cessna distributors abused their wholesalers' discount by competing directly with dealers like White. According to White, these distributors sold aircraft directly to end-users, and the cost advantage the distributors enjoyed enabled them to injure competition by squeezing the zone dealers out of the market. If true, this allegation would establish that Cessna violated § 2(a) of the Robinson–Patman Act by discriminating in price between distributors and dealers, where the purchasers both sold the commodities in the same geographic market and on the same functional level.

After hearing from twenty witnesses at trial plus fourteen others by deposition, and after working through over a thousand plaintiffs' exhibits, the District Court found

---

1. This collection suit was consolidated with the present Robinson–Patman countersuit by the Judicial Panel on Multi–District Litigation, *In re Cessna Aircraft Distributorship Antitrust Litigation,* 359 F.Supp. 543 (J.P.M.L.1973).

2. The Hon. Ross T. Roberts, late a United States District Judge for the Western District of Missouri.

3. White's appeal focuses on its own claim of competitive injury. No other class members join White on its appeal.

that White had failed to demonstrate any actual injury which would justify a damage remedy under the Act. In capsule form, the Court's analysis proceeded as follows.

1. Distributors competed with dealers only when they sold directly to end-users, and White presented only twenty-nine instances of such sales during the period in question. 657 F.Supp. at 703–07, 717–18.

2. White generally failed to present evidence of collusion between commonly owned distributors and "captive" dealerships sufficient to justify attributing sales made by distributor-owned dealerships to the distributors themselves. 657 F.Supp. at 707–08.

3. An analysis of White's sales of aircraft establishes a geographic market area of 150 miles for White's sale of single-engine Cessnas, and a nationwide market for the multi-engine 402A models. After comparing White's market overlap with offending distributors, the court concluded that none of the distributors sales of single-engine planes occurred in geographic competition with White. 657 F.Supp. at 708–11.

4. White failed to prove by a preponderance of the evidence that any sales were actually diverted from White as a result of the remaining 14 proven distributor sales to end users. 657 F.Supp. at 712–15. As a result, the District Court entered judgment for Cessna.

On appeal, White claims that the trial court's order fails to state factual conclusions and legal findings and conclusions in enough detail to meet the standards of Fed.R.Civ.P. 52(a). At first blush, this ground of appeal seems astonishing when urged against an opinion filling 31 pages in the *Federal Supplement*. On closer examination, it appears that White's objections to the formal sufficiency of the trial court's findings are really arguments that the trial court misapplied the law and committed clear error in finding fact.

## II.

We discuss the appellant's objections following the structure of the trial court's analysis.

### A. Functional Competition

White argues that the District Court's order ignores many specific examples of distributor-dealer competition presented in its narrative statement of fact, examples which White proceeds to list. White therefore concludes that the Court's order is insufficient under the standards of Rule 52(a).

■ Trial courts must indeed state legal and factual conclusions sufficient to give an appellate court a clear understanding of the grounds of its decision. See *Allied Van Lines, Inc. v. Small Business Administration*, 667 F.2d 751, 753 (8th Cir.1982). This the trial court did with a remarkable degree of clarity. What Rule 52(a) does not require is a particularized finding on each piece of evidence presented by the parties. If it did, it would be impossible to adjudicate cases as complex as this one. According to White, the plaintiff's narrative statement of fact included over 8,000 separate statements occupying over 900 written pages; no rational system of civil procedure would compel a trial judge to issue 900–page opinions making 8,000 findings of fact. It is sufficient that the District Court state its decision so that the parties and reviewing court understand what it has decided and why.

A review of the evidence of distributor-dealer competition that White proffers on appeal confirms that White and the District Court are proceeding on very different legal approaches to the concept of functional competition under § 2(a). White argues that any distributor sale to an entity "which is not an authorized Cessna dealer" constitutes a sale in competition with zone dealers like White. Under the District Court's analysis, distributor sales to independent *unauthorized* dealers occurred at the distributor's proper functional level, and so such sales were not treated as competitive with dealers, whose function was to sell to end-users.

■ We agree with the District Court's analysis. Nothing in the Robinson–Patman Act compels a manufacturer like Cessna to

impose a vertical restraint on its wholesalers' sales to limit them to "authorized" or contracted dealers. See 5 Von Kalinowski, *Antitrust Laws and Trade Regulations*, § 30.02[2][a] (1988). Dealers like White who desire to compete in selling to *other dealers* will of course suffer a cost disadvantage compared with distributors, but to hold that the larger distributors' discount violates § 2(a) in this circumstance would effectively abolish two-channel distribution systems in all industries.[4] White cites no authority for this extraordinary interpretation of the Act, nor can we find any.

White also presses a miscellany of other evidence which tends to show distributor-dealer competition, including Cessna's use of the word "retail" to describe certain kinds of distributor sales, as well as instances of sales "passed through" subsidiary dealerships by distributors. On review, we presume that the District Court weighed the evidence before it; our review of the Court's factual findings is limited to the question of whether the trial court committed clear error. We cannot say that appellant White has presented evidence sufficient to reverse the trial judge's findings. We affirm the Court's finding that the plaintiff's proof of distributor sales to end-users extends only to the twenty-nine sales listed in the appendix to the Court's order. 657 F.Supp. at 717–18.

## B. "Captive" Dealerships

The second ground of White's claim of insufficient findings involves the Court's rejection of White's theory that commonly owned dealerships and distributors functioned as the same economic entity.

We have little trouble settling this ground of appeal in the terms that White presents it. There is no question that the District Court clearly laid out its finding— that, with one exception,[5] there was no proof that any Cessna distributor passed on the benefit of its higher discount to its subsidiary dealers. 657 F.Supp. at 707. Furthermore, the District Court left no ambiguities in its legal approach to White's arguments for disregarding the dealerships' separate corporate status or its factual findings on White's evidence. Accordingly, we see no merit in White's claim on appeal that the trial court's order violated Rule 52(a).

■ Again, it seems that White's appeal on this issue is really a disguised challenge to the District Court's findings of fact. A review of the evidence which White claims

---

**4.** White places a great deal of emphasis on its loss of the business of independent dealer Roy Horridge to distributor Walston. If Horridge had been an end-customer, this diversion would clearly have violated the Act. As a dealer, however, Horridge appears to be precisely the kind of purchaser that distributors legitimately cater to.

White objects that Horridge buys planes at the same price as White, while Horridge bears none of the costly burdens imposed on authorized Cessna dealers, like maintenance of a showroom, purchase of demonstrator aircraft, etc. Whatever the merits of White's complaint about the unfairness of independent dealers with lower overhead buying the same commodities for the same price as authorized dealers, it is clear that § 2(a) does not prohibit this result. The Robinson–Patman Act proscribes discriminatory pricing, not pricing which fails to discriminate between dealers with unequal costs at the same level of distribution. Moreover, the burdens that Cessna's dealership agreement imposed on White presumably were matched by commensurate economic benefits. One may reasonably expect that authorized dealers with showrooms and other customary trappings of

authorized status will be able to attract more customers interested in a stable, long-term relationship.

Finally, White makes much of the fact that Horridge had once been a customer of White's. This fact does not establish functional competition between White and the distributor who ultimately undersold White. In general terms, a retailer who manages for a time to sell to another retailer does not thereby establish competitive injury from the wholesaler to whom his retailer-customer ultimately takes his business.

**5.** The exception involved Walston Aviation, Inc., a dealership which also controlled several distributors. The District Court found that in one instance in 1969, the Cessna discount on a "close-out" sale of planes to Walston distributors was allocated in part directly to the Walston dealership. However, the District Court found that the plaintiff dealerships had not purchased any new non-current 1969 Cessnas, and so found that the Walston dealership's constructive purchase of the bulk of Cessna's 1969 production at the distributor's discount did not represent an analogous transaction for Robinson–Patman purposes.

the Court overlooked fails to convince us that the Court's findings were clearly erroneous. White refers to several items of proof which it claims demonstrate interlocking management and centralized accounting among commonly owned distributors and dealers. We entirely agree with the District Court that none of these elements is sufficient to justify disregarding the separate corporate status of the subsidiary. 657 F.Supp. at 707. The key question for Robinson–Patman purposes is whether the relationship between distributors and "captive" dealers was so integrated that the subsidiary dealerships—which competed on the same functional level as the plaintiffs—could be taken to have purchased the planes at the higher distributors' discount. White gives us no reason to reverse the District Court's findings of fact on this issue.

### C. Geographic Competition

■ White argues that the District Court's findings on the limited scope of White's geographic market ignore evidence in the record. Once again, this ground of appeal is mislabeled as a challenge to the sufficiency of the trial court's findings. As stated, we have no trouble affirming the District Court, since its findings on the scope of the competing entities' geographic market are unambiguously stated, and the reasons for the result are clearly developed. 657 F.Supp. at 708–11.

White's appeal on this issue really asks us to find that the evidence that White alleges has been overlooked renders the Court's findings clearly erroneous. In particular, White urges that the distributors' use of national advertising establishes every sale by distributors within White's geographic market area as a sale "in competition" with White. The problem with White's evidence is that White continues to apply its proof to its theory—which we reject—that distributors may sell only to authorized Cessna dealers. White's burden is to show distributor sales to end-users

within White's geographic market, and its presentation of evidence showing distributor sales to independent dealers in White's area does nothing to carry this burden.

As a result, we find no error in the District Court's summary of distributor sales to end-users found in the appendix to its order. 657 F.Supp. at 717–18. Nor do we find error in its finding that none of the distributor sales of single-engine planes occurred in geographic competition with White. 657 F.Supp. at 708–10.

### D. Actual Injury

White challenges the District Court's conclusion that it suffered no actual injury from Cessna's violations of § 2(a).

White argues, first, that proof of price discrimination creates an inference of injury to competition, citing *F.T.C. v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948). White's claim is well-taken, but it does not seem to challenge the District Court's opinion in any way. The District Court found that White had established a prima facie case that Cessna injured competition by selling at a discount to distributors who at times resold to end-users. As a result, the Court held, following *Morton Salt*, that White had proved that Cessna violated § 2(a). 657 F.Supp. at 711–12. We cannot understand why White raises the issue of injury to competition under § 2(a) on appeal, since the District Court upheld the plaintiff's position on this issue.

■ The fact that the plaintiff has established that Cessna's pricing practices may injure competition[6] in violation of § 2(a) does not mean that White has proved that it has suffered such actual injury as a result of this violation to entitle it to treble damages under § 4 of the Clayton Act. 15 U.S.C. § 15. See *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561–63, 101 S.Ct. 1923, 1926–28, 68 L.Ed.2d 442 (1981).

**6.** We note that Cessna may well have had affirmative defenses which could have been presented in the event that White's § 2(a) claim

had not been dismissed at the close of plaintiffs' case.

White's proof of actual injury depended on (1) evidence from its expert economist on the tendency of lower-cost distributor sales to consumers to depress profits for zone dealers nationwide; (2) evidence of the general unprofitability of White's operations during the subject period; and (3) evidence of three end customers with whom White had communications who ultimately purchased from distributors. The District Court was unpersuaded by White's expert economist both because the witness proceeded on the assumption of nationwide market competition among dealers for all aircraft and because the economist's projections of adverse effect on the average Cessna dealer failed to prove any particular injury for the White dealership. 657 F.Supp. at 712–13. The general unprofitability of White's operation, similarly, did not suffice to prove to the trial court that Cessna's violation of the Act had caused any profit loss, especially in light of a recession in the aircraft industry during the period in question. 657 F.Supp. at 713. Finally, the District Court found that the three instances of distributor sales to customers with whom White had communicated did not prove that sales had been diverted from White, since the consumers' equipment needs did not match the specifications of White's aircraft, and since White had no prior dealings with any of the customers. *Id.* at 713–15. As a result, the Court held that White had failed to prove that it had suffered any actual injury from Cessna's violation of the Act, and so dismissed White's Robinson–Patman claim.

Once again, White's appeal rests on the stated ground that the Court's findings were inadequate under Rule 52(a). In light of the clarity and detail of the Court's findings, we reject this argument out of hand.

White's real objection seems to be, not that it cannot determine what the Court's findings or reasoning is, but that it disagrees with the Court's factual conclusion. Again, we review only for clear error. We do not know whether White's evidence of its business difficulties from 1968 onward would convince us of a causal connection to Cessna's violations of the Act, were we sitting as the finders of fact. We cannot say, though, that the trial court committed clear error in finding that White had failed to prove it had suffered actual injury from Cessna's violations, and we therefore affirm the court's judgment against White on its Robinson–Patman claim.

### III.

■ The Court also rejected White's parallel claim of anti-competitive conspiracy under § 1 of the Sherman Act. The Court found no evidence sufficient to prove that Cessna had combined with its distributors to exclude zone dealers from the end-consumer market for its new, current aircraft. Further, the Court held that Cessna's closeout bulk sales of non-current planes to distributors, even if it had an exclusionary effect, fell well within the rule of reason for purposes of determining antitrust liability. 657 F.Supp. at 715–16.

On appeal, White briefly recapitulates its argument below, and again labels its disagreement with the Court's factual conclusions as an appeal from insufficient findings. We cannot find any ambiguity or lack of clarity in the Court's factual findings, and White presents no reason to reject the substance of the Court's finding that no conspiracy existed between Cessna and its distributors. Accordingly, we affirm the Court's dismissal of White's Sherman Act conspiracy claim.[7]

### IV.

■ White appeals the District Court's decertification of the plaintiff class, re-arguing its earlier contention that each zone dealer was commonly affected by nationwide distributor competition. Because we reject White's theory of nationwide markets for most Cessna aircraft, we affirm

---

**7.** We need not reach White's appeal from the District Court's judgment dismissing White's conspiracy claims against the Cessna Finance Corporation (CFC). Even if, as White claims, CFC is only a sales tool of Cessna, White's failure to prove a right of recovery against Cessna necessarily extends to CFC as well.

the District Court's findings that individual questions of fact (in this case, the extent of distributor competition with individual dealerships) predominate over common questions. Other zone dealers may well be able to demonstrate actual injury from distributor competition inside their geographic markets. This proof of liability would depend on particular facts which would vary for each dealer, and so the District Court appropriately decertified the plaintiff class, with notice to class members to permit the individual litigation of these potential claims.

The judgment of the District Court dismissing the claims of plaintiff White Industries is accordingly

Affirmed.