David JOHNSON, Midwest Radiator, Inc. n/k/a MWR Holdings, Inc., Plaintiffs,

v.

MODINE MANUFACTURING COMPANY, Defendant.

No. 4–01–CV–90147.

United States District Court, S.D. Iowa, Central Division.

Sept. 18, 2002.

Michael P Holzworth, Des Moines, IA, David C Shinkle, Des Moines, IA, for plaintiffs.

Mark E Weinhardt, David K Basler, Danielle M Shelton, Belin Lamson McCormick, Zumback & Flynn PC, Des Moines, IA, Sondra A Hemeryck, Joseph A Cancila, Jr., Schiff Hardin & Waite, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

The Court has before it Defendant's Motion for Judgment on Partial Findings. This is an action tried upon the facts without a jury. Plaintiff has presented and rested its case before the Court. The Court heard oral argument from both sides on the motion. This matter is fully submitted. With reference to the Court's findings of fact and conclusions of law below, Defendant's motion is granted on all counts.

## 1. JUDGMENT ON PARTIAL FINDINGS

Under Rule 52(c) of the Federal Rules of Civil Procedure, if a plaintiff fails to produce evidence of a prima facie case in a bench trial, the case cannot be submitted for decision, and the Court must enter judgment on partial findings for the defendant. *Bowen v. Celotex,* 292 F.3d 565 (8th Cir.2002). As Plaintiffs have now rested their case, the question before the Court is whether Plaintiffs have met their burden of production. Restated, the Court must determine whether Plaintiffs have introduced facts which, *taken as true,* would

*permit* the conclusion that Plaintiffs are entitled to recover on the claims asserted. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If any rational person would have to find the existence of facts constituting a prima facie case, the Plaintiffs' burden has been met, and the trial proceeds. *Id.* If, however, no rational person could find such facts, the Court must enter judgment for the Defendant as a matter of law. In the present case, Plaintiffs have failed to overcome their burden of production on any of the asserted claims, and Modine is entitled to judgment as a matter of law.

## 2. FINDING OF FACT

A Judgment on Partial Findings under Rule 52 requires that the Court find the facts specially and make its conclusions of law thereon. Rule 52(a) does not require particularized findings on each piece of evidence presented by parties since it would be impossible to adjudicate complex cases; it is sufficient that the District Court state its decision so that parties and the reviewing court understand what it has decided and why. *White Industries, Inc. v. Cessna Aircraft Co.,* 845 F.2d 1497 (8th Cir.1988), *cert den* 488 U.S. 856, 109 S.Ct. 146, 102 L.Ed.2d 118. A determination of whether Plaintiffs have met their burden of production necessarily precedes any appraisal of credibility. *Id.* The Court will, therefore, ascribe truth to all evidence that Plaintiffs have introduced. Accordingly, the Court makes the following finding of facts.

In 1976, Plaintiff David Johnson bought Ankeny Radiator for $15,000. For the next twenty years, Johnson expanded his original business and acquired or started other radiator shops in Iowa, Minnesota, Missouri and Nebraska. Plaintiff Midwest Radiator Inc. (MWR) resulted from Johnson's incorporation of his various businesses in 1987. Johnson served as MWR's president and CEO, and was the majority shareholder of the associated MWR corporations. Before the spring of 1996, there were five different Midwest Radiator corporate entities representing different geographical locations. During the spring and summer of 1996 those companies merged into a single company which became MWR. In the course of consolidating the companies, Johnson bought out all minority shareholders. In May 1998, MWR transferred substantially all of its assets to Installer Parts and Services, LLC.

By early 1996, MWR had expanded its business to include five corporations operating eight locations in four states. As well, MWR had recently completed construction of a large new warehouse, and had begun to acquire additional inventory. Although MWR had addressed the potential of future growth and the possibility of seeking an investor to purchase a minority share in the company, the company had no specific expansion plans or plans to add new locations.

Defendant Modine Manufacturing Corporation (Modine), headquartered in Racine, Wisconsin, is a manufacturer of radiators and other heat transfer equipment. Between 1987 and 1996, MWR and Modine enjoyed a mutually beneficial relationship. Operating as a warehouse distributor of Modine radiators, MWR initially purchased very little from Modine. By 1996, however, MWR was purchasing over $2,000,000 worth of Modine products annually. The relationship between the companies also included MWR's 1989 purchase of two Minneapolis area radiator shops from Modine. Throughout the course of MWR's dealings with Modine, including the purchase of the two businesses, Johnson was never made aware of the fact that Modine's board of directors was, or needed to be, involved in the sale or purchase of a business.

On or about June 5, 1996, Plaintiff David Johnson and Dale Werth, a second MWR representative, traveled to Racine to meet with Modine employees to discuss their mutual business. Representatives from Modine included M. Gerald Baker, group vice president in charge of Modine's aftermarket division; Leroy Hanstedt, controller of the aftermarket division; Craig Cameron, general manager of the aftermarket division, and Jim Ptak, regional sales manager of the aftermarket division. At this meeting, Modine representatives told Johnson that they wanted MWR to expand to at least four new locations: Dallas, Corpus Christi, Tulsa, and Wichita. Johnson informed Modine's representatives that MWR would be willing to add new sites, but doing so would require an infusion of capital. Baker asked whether Modine could be MWR's investor, to which Johnson replied that he would be interested in having Modine as a minority equity partner. Johnson suggested that he would be willing to sell a 30% interest in the five MWR corporations for $1,000,000.00. At this point Baker turned to the other Modine representatives and said, "I want this deal done within the next thirty days." Discussions followed regarding the growth of MWR's business and the expansion into new markets, and both sides agreed that this would be a "perfect fit." No written agreement was drafted at this meeting or at anytime thereafter, and the particular terms of the deal were never specified. Regardless, Johnson believed that Baker, Hanstedt, and Cameron had the authority to bind Modine by their words and actions.

After the formal meeting, Johnson, Werth and the Modine employees played golf at Baker's Racine country club. Johnson and Baker shared a cart for the round and continued to discuss the proposed deal, including some of the specific terms. At some point during the round, Baker advised Johnson to be sure to keep his controlling interest in MWR.

In late June, Hanstedt, Modine's controller for the aftermarket division, visited MWR's corporate offices to review its books and records. Shortly thereafter, Hanstedt told Johnson that they were "within a hand grenade's throw" of each other. Hanstedt indicated that Johnson's asking price for a 30% share was not a problem and that Modine might even be willing to buy a 40% share for $1.5 million. Johnson stated that he was not opposed to selling a larger share so long as he was able to keep a controlling interest in MWR. Johnson believed Hanstedt was the person with the knowledge and authority to set the purchase price for Modine.

In early July 1996, Hanstedt telephoned Johnson to say that all necessary parties at Modine had signed off on the deal and that this was a done deal. In subsequent telephone conversations between Johnson and Cameron, Cameron repeatedly told Johnson that this was a done deal. Cameron also told Johnson that at some point the aftermarket division would tell Modine's Board of Directors "what we are doing here." Such notification, Cameron explained, could not occur until the September board meeting, as the schedule for the July meeting was full and no August meeting was scheduled. Regardless, Johnson believed that board notification was a mere formality.

After the September Board meeting, held on or about September 17, 1996, Cameron told Johnson that the Board had neither approved nor disapproved of the deal, but that such approval was indeed necessary. Cameron further indicated that one of the Board members had expressed concerns about the deal and where it fit into Modine's long-term plans. Cameron, however, assured Johnson that the deal would be approved at the October Board meeting and that there was nothing to worry about. On September 26, while Cameron and

Hanstadt were in Des Moines, they and Johnson went out for an evening meal where they toasted to a "done deal." In mid-October, Johnson received a call from Hanstadt indicating that Modine's president had resigned and that the October board of directors meeting had been "cleared," but the deal would be addressed at the November meeting. At this point, Johnson indicated that he could not wait any longer, but both Hanstadt and Cameron encouraged Johnson not to look for other investors and to wait until the November meeting. In November 1996, Johnson learned that Modine's board of directors had not approved the deal and that Modine would not be investing in MWR.

After the June meeting in Racine, and based on the assurances he had received from Baker, Hanstedt, and Cameron that this was a "done deal," Johnson began preparing MWR for the sale to Modine. These preparations included the purchase of a new computer system, the consolidation of the five MWR corporations into one corporation, and the buyout of all minority shareholders. In so doing, MWR committed much of its usual operating income to the implementation of these preparatory activities. During this time, MWR was unable to pay its vendors in as timely a fashion as necessary to receive certain cash payment discounts. As well, MWR lost sales and productivity due to the necessary training and other expenses involved with the installation of the new computer system.

In April 1994, Dr. Paul Holzworth, Johnson's primary care physician, diagnosed Johnson with depression and prescribed the anti-depressant Prozac. In 1997, several months after the deal with Modine failed to materialize, Johnson experienced reinvigorated episodes of depression and even contemplated suicide. After a particularly acute emotional breakdown in April 1997, and at the behest of his family, Johnson sought treatment for his emotional problems. Johnson first visited Dr. Holzworth. Dr. Holzworth referred Johnson to a psychiatric firm, Dr. Wadle & Associates, wherein Johnson was treated by Dr. Thomas Koithan D.O. Dr. Koithan confirmed Dr. Holzworth's original diagnosis of depression, prescribed a higher dose of Prozac, and referred Johnson to a psychologist for psychotherapeutic counseling. Johnson never participated in psychotherapy, but continued to receive treatment from Dr. Koithan and continued to take antidepressants until 2001.

## 3. CONCLUSIONS OF LAW

A federal district court, sitting in diversity, applies the relevant state's substantive law governing the burden of proving state law claims at trial. *Roberts v. Francis*, 128 F.3d 647, 650 (8th Cir.1997) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Thus, this Court will look to Iowa law for the essential elements of Plaintiffs' claims. Plaintiffs' complaint specifically asserts five separate causes of action against Defendant Modine: 1) Promissory estoppel; 2) Breach of an implied in fact contract; 3) False representation; 4) Breach of an implied duty to deal in good faith; and 5) Breach of an implied duty to negotiate in good faith. Although not specifically pleaded, Plaintiffs' complaint asserts, and evidence was introduced regarding, a sixth claim for infliction of emotional distress. Pursuant to Rule 52(a) and (c), the Court will make findings of law with regards to each of the various claims individually.

Before commencing discussion of the Plaintiffs' claims, delineating between the various claims and the associative Plaintiff is a worthwhile endeavor. Joined as Plaintiffs in this case are both David Johnson in an individual capacity, and Midwest Radia-

tor, Inc., as a corporate entity. On its face, Plaintiffs' complaint appears to join both parties to all claims. The nature of the claims and the facts of this case, however, precludes such joinder. Neither the pleadings, nor the evidence introduced, suggests that any dealings took place between Modine and David Johnson in his individual capacity. The Court recognizes, however, that the dealings between Modine and MWR were with David Johnson in his capacity as the president and CEO of MWR. Furthermore, the Court recognizes that MWR's claims against Modine depend in large part on representations made to Johnson in his capacity as president and CEO of MWR, and Johnson's own perceptions and beliefs surrounding the relevant events in the same capacity. To the extent, however, that counts I–V of Plaintiffs' complaint asserts claims by David Johnson in his individual capacity, the Court finds for Defendant. Conversely, to the extent that Plaintiffs' complaint asserts a claim for infliction of emotional distress, logic dictates that this claim can apply only to Johnson in his individual capacity. The Court will address the claim accordingly.

## A. Promissory Estoppel

■ To establish a claim for promissory estoppel, and thereby overcome the burden of production, a party must produce "strict proof" of: "1) a clear and definite promise; 2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; 3) the promisee acted to his substantial detriment in *reasonable reliance* on the promise; and (4) injustice can be avoided only by enforcement of the promise." *Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 49–50 (Iowa 1999). In the present case, MWR has failed to produce strict evidence of any of these elements.

A promise is a "declaration...to do or forbear a certain specific act." *Id.* at 50–51. By its terms, a clear and definite promise requires a high measure of specificity and certainness. If the parties to the promise cannot identify the terms of the promise the complaining party now seeks to enforce, a clear and definite promise does not exist. In all of its dealings with MWR, Modine never made a clear and definite declaration to do or forbear any specific acts. Plaintiff offered no evidence to show the terms of Modine's alleged promise. The assurances by several parties, none of whom had authority to bind Modine to the purchase of a minority interest in MWR, that "this is a done deal" does not amount to a clear and definite promise. At best, Plaintiff showed that the parties had met, and had agreed to agree in the future. As the other three elements of promissory estoppel depend on the existence of a promise, Plaintiff cannot prove any of these elements. As MWR has failed to overcome its burden of production for its claim of promissory estoppel, Defendant is entitled to a judgment as a matter of law. Defendants motion is granted on count I.

## B. Breach of an Implied Contract in Fact

■ An implied in fact contract differs from an express contract only in that the agreement between the parties is shown by conduct rather than words. *Frank Millard & Co. v. Housewright Lumber Co.*, 588 N.W.2d 440, 441–42 (Iowa 1999). Thus, Plaintiff's burden of production still requires producing evidence showing mutual assent, an offer, an acceptance, and consideration. *See McBride v. City of Sioux City*, 444 N.W.2d 85, 90 (Iowa 1989). The terms of any agreement between Modine and MWR are generously described as ambiguous, and more accurately described as nonexistent. Both Modine

and MWR are and were sophisticated multi-million dollar corporations negotiating for the million plus dollar purchase of a minority interest in MWR. Such a deal does not occur with a handshake at the golf course. Plaintiff offered no evidence beyond MWR's offer to sell 30% of the corporation for one-million dollars. What Modine would get in return, how MWR was to expand into the proposed new markets, and the basic terms of the agreement were never offered into evidence, because these terms of the deal had never been discussed by the parties. If no clear offer is made, there can be no mutual assent, no acceptance, and no contract.

A contract does not generally exist when the parties agree to form the terms of a contract at a later basis. *Whalen v. Connelly*, 545 N.W.2d 284, 293 (Iowa 1996) (citing *Air Host Cedar Rapids v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1990)). "In other words an agreement to agree is not a contract." *Id.* An agreement to agree precisely describes the nature of the proposed deal between MWR and Modine. At the June 5, 1996, meeting in Racine Modine's officer Gerald Baker stated "I want this deal done within the next thirty days." Clearly this evinces the lack of a conclusive agreement, and merely the desire to agree in the future. Such does not a contract make. Plaintiff has failed to overcome its burden of production on its breach of an implied contract claim, and Defendant is entitled to judgment as a matter of law. Defendant's motion is granted on count II.

**C. False Representation**

 Proving fraud under Iowa law is no simple matter. *In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999). Recovery requires "clear and convincing evidence of [ . . . ] (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance,

and (6) resulting injury or damage." *Id.* (quoting *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996)). In the present case, Plaintiff has failed to produce evidence showing clear and convincing evidence of a number of elements, notably misrepresentation and justifiable reliance.

Plaintiffs have offered no evidence of any material misrepresentations by Modine. The evidence shows that Plaintiffs and Modine had discussions about a potential future investment and discussed a range of investment and ownership interests. Statements that this was a done deal by Modine employees who lacked the ability to bind the company to the million dollar purchase of a minority interest in MWR were not material misrepresentations.

MWR has also failed to show a justifiable reliance on any statements made by Modine or its employees. MWR was a multi-million dollar corporation doing business in four states. The evidence shows that MWR customarily conducted corporate business through the use of written contracts and the assistance of counsel. To suggest that MWR would diverge from this practice when selling a large portion of its own equity is absurd. Thus, MWR was not justified in relying on statements by Modine employees that this was a "done deal." Plaintiff has failed to meet its burden of production on its claim for fraudulent representation. Defendant is entitled to a judgment as a matter of law on this claim, and Defendant's motion is granted on count III.

**D. Duty to Negotiate and Deal in Good Faith**

 Iowa law reflects the position of the *Restatement (Second) of Contracts*, limiting the implied duty of good faith and dealing to the performance and enforcement of a contract. *Engstrom v. State*,

461 N.W.2d 309, 314 (Iowa 1990); *Restatement (Second) of Contracts,* § 205 & comment c (1981). The same duty has never been extended to the negotiation of a contract, and this Court sees no reason to do so now. It follows that where no contract exists, there can be no duty of good faith in performance and enforcement. As this Court has already found that no contract existed, Defendant could not have breached a duty to perform and enforce that contract in good faith. Defendant is, therefore, entitled to a judgment as a matter of law, and Defendant's motion is granted on counts IV and V.

### E. Infliction of Emotional Distress

■ To recover on a claim of infliction of emotional distress, a party must show *inter aiia,* outrageous conduct that goes beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 776. Although negotiating over rounds of golf, holding dinner parties, and making assurances that this is a "done deal," may be undesirable to some, it is hardly conduct that goes beyond all bounds of human decency. Defendants motion for judgment as a matter of law is granted on Plaintiff's claim for infliction of emotional distress.

### IV. ORDER

For the reasons stated above, Defendants' motion for judgment on partial findings is granted on all counts.

IT IS SO ORDERED.