COLLOTON, Circuit Judge,
dissenting.
The court’s characterization of this case as one that “turns on fact findings” of the district court, ante, at 1021, obscures a significant legal issue that is central to the appeal: When the government proceeds with an action brought by a relator under the False Claims Act, and then settles both the claim brought by the relator and a different claim that was not brought by the relator, is the relator entitled to a share of the proceeds of both claims? The better view according to the text and structure of the statute is that the relator may recover only from the proceeds of the settlement of the claim that he brought.
The False Claims Act, 31 U.S.C. §§ 3729-8733, provides that a private person “may bring a civil action for a violation of section 3729 for the person and for the United States Government.” Id. § 3730(b)(1). Section 3729 establishes liability for certain acts that constitute false claims against the government. When a private person brings an action under § 3730(b), the government has the option to “proceed with the action” or to “decline[ ] to take over the action.” Id. § 3730(b)(4). If the government “proceeds with an action brought by a person under [§ 3730](b),” then such person shall, with an exception not relevant here, receive a percentage of “the proceeds of the action or settlement of the claim.” Id. § 3730(d)(1).
This case requires the court to decide what constitutes “the proceeds of the action or settlement of the claim.” Neal Roberts and Norman Rille are private qui tam relators who brought an action against Hewlett-Packard Company (“HP”) under § 3730(b). The government elected to proceed with the action, and it eventually reached a settlement with HP. As the court explains, ante, at 1014, the settlement agreement attributed $9 million to a kickback scheme that was alleged in the action brought by Roberts and Rille, and $46 million to a defective pricing scheme related to contract number GS-35F-0066N (“Contract 35F”) of the General Services Administration. HP disclosed the defective pricing scheme after the government took over the action and HP conducted an independent audit of its business processes. The question presented is whether the proceeds of the settlement concerning the defective pricing scheme are “proceeds of the action or settlement of the claim,” such that the relators are entitled to receive a percentage.
Roberts and Rille contend that if the government proceeds with an action brought by a relator, then the relator is automatically entitled to a percentage of any “proceeds” that the government receives as a result. The text of the statute will not bear this construction. The rela-tors are entitled to a share of “the proceeds of the action or settlement of the claim.” 31 U.S.C. § 3730(d)(1). The Act contemplates that both an “action” and a “claim” are filed in court. See id. § 3730(e)(4)(A). In distinguishing between “the action” and “settlement of the *1023 claim,” § 3730(d)(1) reads as though Congress meant for the first clause (“proceeds of the action”) to capture proceeds of an action litigated to judgment and for the second clause (“proceeds of the ... settlement of the claim”) to encompass proceeds of a settlement. See also 31 U.S.C. § 3730(d)(2) (“If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount ....”) (emphasis added). With respect to settlement, § 3730(d)(1) is clear that the relator’s share is based only on proceeds of “the claim.” The use of the definite article refers back to a claim that is “brought by” the relator in “an action” that he initiates. The settlement language does not extend to a different claim that is settled by the government but not originally “brought by” the relator. This case involves a settlement. The relators’ right to recovery is thus limited to a share of the settlement of the claim that they brought.
The relators focus on the phrase “proceeds of the action,” and assert that “once the government intervenes in the relators’ case and receives proceeds,” the relator is entitled to a share of all the proceeds. Appellee’s Br. at 28. Even assuming the proceeds-of-the-action clause applies in the case of a settlement, the phrase “proceeds of the action” refers back to “an action brought by a person.” The relators would have this mean proceeds not of the action as brought by the relators, but proceeds of the action as developed after intervention by the government. As a textual matter, this seems unnatural. The phrase “proceeds of the action” is paired with “proceeds of the ... settlement of the claim,” and the settlement clause plainly refers to “the claim” brought by the relator, not a claim later added by the government. It would be odd to read the adjoining clause — “proceeds of the action” — to encompass more than the action as brought by the relator. It also would be ineonsis-tent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government’s recovery on a particular claim that was added after the government’s intervention.
The relators’ reading also would conflict with the Sixth Circuit’s approach to an interrelated provision of the Act. Section 3730(c)(5) provides that if the government pursues “its claim through any alternate remedy available to the Government,” then “the person initiating the action shall have the same rights” in the alternate proceeding “as such person would have had” if the government had proceeded with the original action. This means that “the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action.” United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir.2001) (internal quotation omitted). A relator, however, is not entitled to a share of whatever recovery the government obtains from the defendant in an alternate proceeding, just because the government’s claim could have been added to the original action brought by the relator. As the Sixth Circuit explained in United States ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634 (6th Cir.2003), a relator seeking recovery must establish that “there exists [an] overlap between Relator’s allegations and the conduct discussed in the settlement agreement.” Id. at 651. A relator is not entitled to a share of the proceeds derived from a non-overlapping claim that the government could have added in the original action but instead pursues in an alternate proceeding. Given the equivalence of recovery required by § 3730(c)(5) and § 3730(d), it follows from Bledsoe that the relator also has no right to a share if the *1024 government adds the non-overlapping claim to the original action after intervening.
So the question in this case is whether the government’s recovery from HP for the defective pricing claim is the “proceeds of the ... settlement of the claim,” that is, “the claim” brought by the relators. The Sixth Circuit understandably construed “the claim” to extend to proceeds of a settlement in which “the conduct contemplated in the settlement agreement ... overlap[s] with the conduct alleged in [the] Relator’s complaint.” Bledsoe, 342 F.3d at 651. Otherwise, the government could deprive the relator of his right to recover simply by recasting the same or similar factual allegations in a new claim or by pursuing the substance of the relator’s claim in an alternate proceeding.
But in its March 2011 order determining the relators’ share of settlement proceeds, the district court apparently adopted a different theory of recovery — namely, that the claim brought by the relators caused HP to disclose additional information that led the government to achieve the settlement of a different claim. As the district court put it, “HP would not have initiated [its] investigation had Relators not filed this law suit,” and “[i]t is no coincidence that HP began its internal investigation just a few weeks after the seal was partially lifted so that a copy of Relators’ Complaint could be provided to HP.” R. Doc. 143, at 7. The court affirms the award to the relators on this basis, concluding that HP’s disclosure of its defective pricing was not purely voluntary, and that the causal connection described by the district court was sufficient to show that “the defective pricing claim settled by the government was related to the action brought by the relators.” Ante, at 1017.
Whatever the merit of this theory as a policy matter, it is not derived from the statute. The statute allows relators to recover a percentage of the proceeds of the settlement of “the claim” brought by the relators, and only that claim. The Act contemplates that the government, after it elects to intervene, may “clarify or add detail” to the claims brought by the rela-tors, or may “add any additional claims.” 31 U.S.C. § 3731(c). Recovery under § 3730(d)(1), however, does not extend to proceeds of the settlement of such “additional claims,” whether or not they are causally connected to the claim brought by the relators. The Act does not provide for an award to relators from the proceeds of settlements that “resulted from” the claim or were “caused by” the claim; relators are limited to a percentage of “proceeds of the ... settlement of the claim.”
To resolve this dispute, therefore, we need additional findings of fact. The district court should make findings about whether there is sufficient factual overlap between the defective pricing claim settled by the government and the claim brought by the relators, such that proceeds of the settlement of the defective pricing claim should fairly be characterized as “proceeds of the ... settlement of the claim” brought by the relators. In its January 2011 order denying the government’s motion for determination of relators’ status, the district court did find that “defective pricing was a part of the allegations made by Relators,” R. Doc. 125, at 5, but this brief statement is insufficient to sustain the award. The court did not explain whether and how any “defective pricing” alleged by the relators is the same as the defective pricing that gave rise to the government’s settlement with HP. Without elaboration by the district court about any asserted factual overlap, there is not a sufficient record to allow for meaningful appellate review. See Fed.R.Civ.P. 52(a); King v. United States, 553 F.3d 1156, 1161-62 (8th Cir.2009); Darst-Webbe Tenant Ass’n Bd. v. St. Louis *1025 Hous. Auth., 339 F.3d 702, 711-12 (8th Cir.2003).
Responding to this dissent, in its penultimate paragraph, the court says the district court found that “the defective pricing alleged by the relators was the same defective pricing claim the government settled.” Ante, at 1022. The court thinks it most significant that the district court said “the Government successfully proceeded with claims initially brought by Relators, and Relators are entitled to a share of the proceeds.” Id. There are several difficulties with this afterthought.
First, the passages cited by the court do not establish the necessary finding. The district court did not say that the relators alleged in their complaint that HP engaged in defective pricing with respect to Contract 35F. The district court said in its January 2011 order that the relators raised “defective pricing claims.” R. Doc. 125, at 5. But an allegation that HP engaged in defective pricing in one discrete area of its large corporate enterprise (e.g., in failing to disclose discounts the company offered to resellers) does not present a “claim” with respect to any and all defective pricing that might later be discovered in other areas of HP’s business (e.g., failing to disclose the lowest prices the company offered to end users). In its March 2011 order, the district court appeared to acknowledge that the government’s settlement of the defective pricing claim with respect to Contract 35F was based on information disclosed by HP after the government’s intervention, and that the rela-tors were not a part of the ensuing investigation. R. Doc. 143, at 7. The court found, however, that “HP would not have initiated this investigation had Relators not filed this law suit.” Id. In other words, the court found in the March 2011 order that the relators’ claims were a catalyst that resulted in the disclosure of new information that led to part of the government’s settlement, but the court did not find that the relators actually brought a claim alleging defective pricing with respect to Contract 35F.
Second, even if the January 2011 order could be construed as a finding that the relators brought a claim concerning defective pricing under Contract 35F, the order does not afford this court “a clear understanding of the basis of the trial court’s decision,” as required by Rule 52(a). See Allied Van Lines, Inc. v. Small Bus. Admin., 667 F.2d 751, 753 (8th Cir.1982) (internal quotation omitted). The January 2011 order does not explain how the court concluded that the relators’ second amended complaint raised a claim concerning defective pricing under Contract 35F. The March 2011 order suggests, if anything, that the court thought the defective pricing claim that the government settled was an additional claim added after the government’s intervention, see 31 U.S.C. § 3731(c), albeit as a result of an internal HP inquiry that was prompted by the rela-tors’ lawsuit.
Third, although the court asserts in the end that the district court found that the relators brought the same claim that the government settled, the court never reviews whether such a finding is supported by the record. The court affirms the district court’s award based on a different theory — that is, that the relators’ action played a role in uncovering the defective pricing scheme that was the subject of the government’s settlement. Ante, at 1017. But as discussed, the court’s theory is legally flawed, because the statute does not give relators the right to a share of recovery based on additional claims that the government brings or settles after it intervenes in an action to pursue a claim or claims brought by relators.
*1026 For these reasons, I would vacate the judgment and remand for further proceedings.